UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| ALLYSON SMITH,<br><br>                    Plaintiff,<br><br>        – against –<br><br>WELLS FARGO BANK, N.A.,<br><br>                    Defendant. | Jury Trial Demanded<br><br>SECOND AMENDED<br>COMPLAINT<br><br>Case: 3:15-cv-00089-SRU |

The Plaintiff, by and through her undersigned attorney, alleges upon knowledge as to herself and her own acts, and as to all other matters upon information and belief, and brings this Second Amended Complaint against the above-named Defendant, and in support thereof alleges the following:

## PRELIMINARY STATEMENT

1.      This action is filed pursuant to the Truth in Lending Act, 15 U.S.C. § 1601, *et seq.* ("TILA"), and the Connecticut Unfair Trade Practices Act ("CUTPA"), Conn. Gen. Stat. § 42-110a, *et. seq.* to enforce the Plaintiff's right to rescind a consumer credit transaction and void the security interest in her home, and to recover statutory damages, actual damages, punitive damages and reasonable attorney's fees and costs for Wells Fargo's violation of TILA and CUTPA.

## JURISDICTION AND VENUE

2.      Jurisdiction is conferred on this Court pursuant to 15 U.S.C. § 1640(e) and 28 U.S.C. § 1331.  The Court has authority to issue a declaratory judgment by virtue of 28 U.S.C. § 2201, *et seq*. The Court has supplemental jurisdiction over Plaintiff's claim under CUTPA pursuant to 28 U.S.C. § 1367.

3.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because the property that is the subject of this action is located within this District.

## PARTIES

4.      The Plaintiff, Allyson Smith ("Plaintiff"), is a natural person residing at 456 Ruth Street, Bridgeport, Connecticut 06606 (the "Property").

5.      Defendant, Wells Fargo Bank, N.A. ("Defendant" or "Wells Fargo") is a national banking association doing business in the State of Connecticut.

## FACTUAL ALLEGATIONS

6.      On June 16, 2008, Plaintiff purchased a residential property located at 456 Ruth Street, Bridgeport, Connecticut for the sum of $165,000.00.

7.      From the time of its purchase to date, the Property has been Plaintiff's principal place of residence.

8.      In order to finance the purchase of the Property, Plaintiff entered into a Note with William Raveis Mortgage, LLC in the amount of $132,000.00 (the "Raveis Note").

9.      In order to secure the Raveis Note, Plaintiff executed an Open-End Mortgage Deed with William Raveis Mortgage, LLC (the "Raveis Mortgage") (the "Raveis Note" and "Ravies Mortgage" are collectively referred to as the "Raveis Loan").

10.     The Raveis Note had a 30 year term with a fixed interest rate of 6.375% and required monthly principal and interest payments of $823.51 per month.

11.     In addition to monthly $823.51 principal and interest payments, Plaintiff was required to make monthly payments of taxes and insurance into escrow.

12.     After Plaintiff purchased the Property, Wells Fargo became the servicer of the Raveis Loan and it serviced the Raveis Loan thereafter until it was refinanced.

2

13.     After Wells Fargo became the servicer of the Raveis Loan, Plaintiff set up autodraft whereby the monthly payments on the Raveis Loan would automatically be taken out of her bank account on the 1st day of each month.

14.     Plaintiff timely made all monthly payments on the Raveis Loan pursuant to the Raveis Note from August, 2008 until March 1, 2012 using the autodraft payment feature described above.

15.     The principal balance of the Raveis Loan was $125,957.86 after Plaintiff made her March 1, 2012 payment on the Raveis Loan.

***Plaintiff's Refinance Transaction with Wells Fargo***

16.     Based upon information and belief, in February, 2012, Plaintiff contacted Wells Fargo to inquire about refinancing the Raveis Loan pursuant to the Home Affordable Refinance Program ("HARP").

17.     Sometime thereafter, Plaintiff applied to refinance the Raveis Loan pursuant to HARP.

18.     On or about February 21, 2012 and February 27, 2012, employees of Wells Fargo left Plaintiff voicemail messages advising her that Wells Fargo would send the closing documents for the HARP refinance after Plaintiff made the March, 2012 payment on the Raveis Loan.

19.     Plaintiff made her March, 2012 payment on the Raveis Loan on March 1, 2012 (through autodraft) and Wells Fargo posted Plaintiff's March, 2012 payment to the Raveis Loan on the same date.

20.     On or about March 5, 2012, Lataska Troutman ("Ms. Troutman"), an employee of Wells Fargo, left a telephone message for Plaintiff telling her to continue making payments on

the Raveis Loan (including the April 1, 2012) payment until Plaintiff was notified that her HARP loan had been approved for funding.

21.     On or about March 9, 2012, Wells Fargo sent Plaintiff a "Close at Home®️ Mortgage Kit" (the "Mortgage Kit").

22.     The Mortgage Kit included a Note from Plaintiff to Wells Fargo dated March 31, 2012 in the principal amount of $126,648.85 (the "Wells Fargo Note").

23.     The Mortgage Kit also included an Open-End Mortgage Deed from Plaintiff to Wells Fargo dated March 31, 2012 (the "Wells Fargo Mortgage") (the "Wells Fargo Note" and "Wells Fargo Mortgage" are collectively referred to as the "Wells Fargo Loan").

24.     The Mortgage Kit sent to Plaintiff also included two (2) copies of a "Notice of Right to Cancel" ("NRC").  A true and correct copy of a NRC that Wells Fargo provided to Plaintiff is attached hereto as Exhibit "A".

25.     The Mortgage Kit sent to Plaintiff by Defendant Wells Fargo also included a Federal Truth-in-Lending Disclosure Statement dated March 8, 2012 ("TILA Disclosure Statement").  A true and correct copy of the TILA Disclosure Statement is attached as Exhibit "B".

26.     The Mortgage Kit sent to Plaintiff by Defendant Wells Fargo also included a HUD-1 Settlement Statement ("HUD-1") that identified the "Settlement Date" as March 31, 2012.  A true and correct copy of the HUD-1 is attached hereto as Exhibit "C".

27.     The Mortgage Kit sent to Plaintiff by Defendant Wells Fargo also included a two page letter from Kristie Lewis, a representative of Wells Fargo (the "Lewis Letter").  On Page 1 of the Lewis Letter, Ms. Lewis stated on behalf of Defendant Wells Fargo, "There are no closing costs or hidden fees with the Wells Fargo Three-Step Refinance *SYSTEM*."  A true and correct

4

copy of the Lewis Letter is attached hereto as Exhibit "D".

28.     The Mortgage Kit provided to Plaintiff by Defendant Wells Fargo also included a one page document titled "Frequently Asked Questions About the Wells Fargo Three-Step Refinance *SYSTEM®*" ("FAQs").  A true and correct copy of the Frequently Asked Questions is attached hereto as Exhibit "E".

29.     The first question of the FAQs states:

> **Q:     How do I know that I'm receiving a no closing cost transaction?**

-       Here's how you will know:  Enclosed in this package are a "Truth in Lending Disclosure Statement", a "Good Faith Estimate" and a "HUD-1 Settlement Statement".  These are legally required documents designed to show you the real of your loan.

-       The "Good Faith Estimate" and "HUD-1 Settlement Statement" are your further guarantee that there are no extra costs.  The fees listed on these documents are what you would normally pay out-of-pocket for a traditional refinance.  ***With this program, these costs will be paid by the Lender.***  You do not have to pay out any extra cash, unless your notary charges you a fee to notarize the closing documents.  Please note, a standard fee associated with the recording of the satisfaction of your existing mortgage will be included in the total payoff if your existing loan.

(emphasis added).

30.     Based upon information and belief, Plaintiff executed all of the documents included in the Mortgage Kit on March 13, 2012, and sent them to Wells Fargo several days thereafter.

31.     On March 30, 2012, Ms. Troutman again called Plaintiff and spoke directly to her and advised Plaintiff that the Wells Fargo Loan had been approved  for funding and that Plaintiff could skip her April, 2012 payment on the Raveis Loan and cancel the autodraft feature on the Raveis Loan for the April 1, 2012 payment.

*__Wells Fargo Misrepresented the Amount that was Required to Pay Off the Raveis Loan__.*

32.    Despite the representation and assurance from Ms. Lewis on behalf of Defendant Wells Fargo in the Lewis Letter (Exhibit "D") that there were no "closing costs or hidden fees" on the Wells Fargo Loan, the Wells Fargo Loan does, in fact, contain hidden fees as alleged below.

33.    Line 104 of the HUD-1 (Exhibit "C") shows a payoff amount of $126,648.85 to Wells Fargo as a payoff on the Raveis Loan.

34.    However, as alleged in Paragraph 15 above, the actual principal balance due on the Raveis Loan after Plaintiff made the March 1, 2012, payment was actually $125,957.92.

35.    Thus, the payoff amount shown on Line 104 of the HUD-1 (Exhibit "C") is $690.93 higher than the principal balance on the Raveis Loan.

36.    Wells Fargo misrepresented the amount of the Raveis Mortgage payoff because Wells Fargo capitalized a $53 recording fee paid to the City of Bridgeport Town Clerk and capitalized $637.93 of interest in the Raveis Loan payoff amount.

37.    Neither of these capitalized amounts was disclosed to Plaintiff in the closing documents Wells Fargo provided and Wells Fargo did not give Plaintiff the option of paying those fees upfront instead of having those fees capitalized into the Wells Fargo Loan.

38.    The capitalization of $690.93 results in Plaintiff paying additional interest on the capitalized amount in the amount of $495.91 over the life of the Wells Fargo Loan.

39.    Therefore, the Wells Fargo closing documents made material misrepresentations regarding the fact that there were no "hidden fees" in the Wells Fargo Loan because the additional interest on the amount Wells Fargo capitalized into the Raveis Loan constitutes a hidden fee.

### *Wells Fargo Misrepresented the Amount of Plaintiff's Escrow Balance*

40.     As discussed above, Wells Fargo processed Plaintiff's March 1, 2012 payment the same day it was received.  Therefore, Wells Fargo knew the exact amount of Plaintiff's escrow balance on the Raveis Loan as of March 1, 2012 was $2,118.35.

41.     Despite knowing the exact amount of Plaintiff's escrow balance on the Raveis Loan, Wells Fargo prepared the HUD-1 it sent to Plaintiff on March 9, 2012.  On line 1001 of the HUD-1 that it prepared, Wells Fargo misrepresented the balance of Plaintiff's escrow account to be $2,613.90.  *See* Exhibit "C".

42.     Wells Fargo's misrepresentation of the escrow balance on the HUD-1 resulted in Wells Fargo stating that Plaintiff's monthly payment beginning May 1, 2012 would be $1,052.87 including taxes and insurance.  However, because of Wells Fargo's misrepresentation regarding the amount of her escrow balance on the HUD-1, Wells Fargo increased Plaintiff's monthly payment by $36.86 per month beginning with Plaintiff's June 1, 2012 payment on the Wells Fargo Loan.

### *The Notice of Right to Cancel*

43.     The NRC that Wells Fargo provided to Plaintiff (Exhibit "A") falsely states that the "date of the transaction" is March 26, 2012.

44.     The NRC that Wells Fargo provided to Plaintiff falsely states that Plaintiff had until March 29, 2012 to exercise her right to rescind the Wells Fargo Loan.

45.     Plaintiff did not become contractually obligated on the Wells Fargo Loan before March 30, 2012, the date that Ms. Troutman called Plaintiff and advised her that the Wells Fargo Loan was approved and that she was not required to make the April, 2012 payment on the Raveis Loan.

46.     Therefore, Plaintiff's three-day right to rescind the Wells Fargo Loan expired no earlier than April 4, 2012, six (6) days after the March 29, 2012 date stated on the NRC that Wells Fargo provided to Plaintiff.

***Plaintiff Timely Sent Wells Fargo a Request to Rescind the Wells Fargo Loan***

47.     On October 21, 2014, Plaintiff sent Wells Fargo a notice that she elected to rescind the Wells Fargo Loan.  A true and correct copy of Plaintiff's rescission request is attached hereto as Exhibit "F".

48.     By letter dated October 30, 2014, Wells Fargo refused to honor Plaintiff's timely request to rescind the Wells Fargo Mortgage.  A true and correct copy of Wells Fargo's letter refusing to honor Plaintiff's timely rescission request is attached hereto as Exhibit "G".

49.     Despite Wells Fargo's refusal to honor Plaintiff's timely request to rescind the Wells Fargo Loan, Plaintiff is ready, willing and financially able to tender the proceeds of the Wells Fargo Loan to Wells Fargo after the Court determines the amount of Plaintiff's tender obligation.

50.     An actual case or controversy now exists between Plaintiff, who has the right to rescind the Wells Fargo Loan, and Wells Fargo, who has refused and continues to refuse Plaintiff's timely request to rescind the Wells Fargo Loan.

AS AND FOR A FIRST CAUSE OF ACTION
(Enforcement of Plaintiff's Rescission Right)

51.     Plaintiff repeats and realleges the allegations set forth in Paragraphs 1 through 50 above as though they were fully set forth herein.

52.     Wells Fargo is a "Creditor" as defined by 15 U.S.C. § 1602(g) because Wells Fargo regularly extends credit that is subject to a Finance Charge.

53.     As part of the consumer credit transaction, Wells Fargo obtained a security interest in Plaintiff's Property.

54.     Wells Fargo's security interest in Plaintiff's Property was not created to finance the acquisition or initial construction of Plaintiff's Property.

55.     The consumer credit transaction between Plaintiff and Wells Fargo was subject to Plaintiff's right of rescission as described in 15 U.S.C. § 1635 and 12 C.F.R. § 1026.23.

56.     15 U.S.C. § 1635(a) states that a borrower:

Shall have the right to rescind the transaction until midnight of the third business day following the consummation of the transaction or the delivery of the information and rescission forms required under this section ..., whichever is later, by notifying the creditor, in accordance with regulations of the Bureau, of his intention to do so. The creditor shall clearly and conspicuously disclose, in accordance with regulations of the Bureau, to any obligor in a transaction subject to this section the rights of the obligor under this section. The creditor shall also provide, in accordance with regulations of the Bureau, appropriate forms for the obligor to exercise his right to rescind any transaction subject to this section.

57.     15 U.S.C. § 1635(f) extends a borrower's right of rescission from three days to three years if the disclosures required pursuant to TILA are not delivered to the borrower.  *See also* 12 C.F.R. § 1026.23(a)(3)(i).

### *Defendant Wells Fargo Failed Clearly and Conspicuously to Disclose the Date Plaintiff's Rescission Period Expired*

58.     15 U.S.C. § 1635(a) and 12 C.F.R. § 1026.23(b)(1)  require a lender to deliver two copies of a notice of right to rescind which shall clearly and conspicuously disclose the date the borrower's rescission period expires.

59.     As discussed above, Plaintiff did not become legally obligated on the Wells Fargo Loan until March 30, 2012, the date that Ms. Troutman called Plaintiff and told her that the Wells Fargo Loan was approved for funding and that Plaintiff could skip the April, 2012

payment on the Raveis Loan.

60.     Therefore, Plaintiff's rescission period did not expire until April 4, 2012, three business days after March 30, 2012.

61.     However, on the NRC provided to Plaintiff, Wells Fargo stated that her rescission period expired on March 29, 2012, six (6) days before her rescission period actually expired.

62.     As a result, the NRC provided to Plaintiff did not clearly and conspicuously disclose the date Plaintiff's rescission period expired.

AS AND FOR A SECOND CAUSE OF ACTION
(Claim for Wells Fargo's Violation of TILA
by Failing to Honor Plaintiff's Rescission Request)

63.     Plaintiff repeats and realleges the allegations set forth in Paragraphs 1 through 62 above as though they were fully set forth herein.

64.     On October 21, 2014, Plaintiff sent Wells Fargo a timely request to rescind the Wells Fargo Mortgage within three years of the Consummation of the Wells Fargo Loan (March 30, 2012) as allowed by 15 U.S.C. § 1635(f).

65.     Wells Fargo improperly failed to respond to Plaintiff's request to rescind the Wells Fargo Loan by refusing to honor Plaintiff's timely request to rescind the Wells Fargo Loan.

66.     Wells Fargo's failure to honor Plaintiff's timely request to rescind the Wells Fargo Loan constitutes an independent violation of TILA.

AS AND FOR A THIRD CAUSE OF ACTION
(Claim for Violation of Connecticut Unfair Trade Practices Act)

67.     Plaintiff repeats and realleges the allegations set forth in Paragraphs 1 through 50 above as though they were fully set forth herein.

10

68.     CUTPA § 42-110b(a) states that "[n]o person shall engage in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce."

69.     CUTPA § 42-110a(4) defines the terms "trade" and "commerce" as "advertising, the sale or rent or lease, the offering for sale or lease, or the distribution of any service or any property, tangible or intangible, real, personal or mixed, and any article, commodity, or thing of value in this state."

70.     Wells Fargo engaged in deceptive acts and practices as described above which include, but are not limited to: (a) misrepresenting the amount that was required to pay off the Raveis Loan; (b) misrepresenting the amount of Plaintiff's escrow balance on the HUD-1 provided to Plaintiff; and (c) misrepresenting to Plaintiff that the Wells Fargo Loan would not have any hidden fees when, in fact, the Wells Fargo Loan contains hidden fees.

71.     Wells Fargo's acts and practices, as described herein, were material to Plaintiff's decision about whether to enter into the Wells Fargo Loan.

72.     Plaintiff suffered an ascertainable loss of money as a result of Wells Fargo's deceptive acts and practices as described herein.

73.     Plaintiff is entitled to punitive damages against Wells Fargo because Wells Fargo knew that their conduct was unfair and deceptive and were in violation of General Statutes § 42-110b(a).

**WHEREFORE**, Plaintiff, Allyson Smith, respectfully requests that the Court enter judgment against Wells Fargo on Counts One and Two of the Second Amended Complaint as follows:

a.     Declare that Plaintiff is entitled to rescind the Wells Fargo Loan;

b.      Declare that Wells Fargo is required to return any money given by Plaintiff to anyone in connection with the Wells Fargo Loan;

c.      Declare that Wells Fargo's security interest in Plaintiff's Property is void;

d.      Order Wells Fargo to take all action necessary to terminate any security interest in Plaintiff's Property created under the Wells Fargo Loan;

e.      Order the return to Plaintiff of any money or property given by Plaintiff to anyone, including Wells Fargo, in connection with the Wells Fargo Loan;

f.      Award Plaintiff statutory damages in the amount of $4,000 for Wells Fargo's failure to honor her timely request to rescind the Wells Fargo Loan;

g.      Order that, because Wells Fargo failed to honor Plaintiff's timely rescission request, Plaintiff has no duty to tender the Wells Fargo loan proceeds to Wells Fargo, but in the alternative, if tender is required, determine the amount of the Plaintiff's tender obligation in light of Plaintiff's claims, and order Wells Fargo to accept the tender amount determined by the Court;

h.      Award Plaintiff actual damages in an amount to be determined at trial;

i.      Award Plaintiff costs and reasonable attorney's fees;

j.      Award such other and further relief as the Court deems just and proper consistent with the claims of Plaintiff herein.

**WHEREFORE**, Plaintiff, Allyson Smith, respectfully requests that the Court enter judgment against Wells Fargo on Count Three of the Second Amended Complaint as follows:

a.      Award Plaintiff actual damages in an amount to be determined at trial;

b.      Award Plaintiff costs and reasonable attorney's fees;

c.      Award Plaintiff punitive damages;

d.      Award Plaintiff any and/or all relief and damages pursuant to Conn. Gen. Stat. § 42-110a, *et. seq.*

e.      Award such other and further relief as the Court deems just and proper consistent with the claims of Plaintiff herein.

## <u>DEMAND FOR TRIAL BY JURY</u>

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff hereby demands a

trial by jury on Count Three of the Second Amended Complaint.

Dated: New York, New York
      August 17, 2015

                                 Respectfully submitted,


                                 RANDALL S. NEWMAN, P.C.

By:   /s/ Randall S. Newman
       Randall S. Newman, Esq.
       37 Wall St., PH D
       New York, New York  10005
       (212) 797-3737
       rsn@randallnewman.net
       Federal Bar No. phv03985

       SEELEY & BERGLASS
       Steven Berglass, Esq.
       121 Whitney Avenue, PH
       New Haven, CT 06510
       (203) 562-5888
       Federal Bar No. ct06030

       *Attorneys for Plaintiff,*
       *Allyson Smith*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 17th day of August, 2015 a copy of the foregoing SECOND AMENDED COMPLAINT was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

<u>/s/ *Randall S. Newman*            </u>
Randall S. Newman

# EXHIBIT A

# Notice of Right to Cancel

| Notice of Right to Cancel |
|---|
| **Your Right to Cancel** |

You are entering into a transaction that will result in a mortgage, lien or other security interest on or in your home. You have a legal right under federal law to cancel this transaction, without cost, within three business days from whichever of the following events occurs last:

(1) the date of the transaction, which is **03/26/12** ; or
(2) the date you received your Truth-in-Lending disclosures; or
(3) the date you received this notice of your right to cancel.

If you cancel the transaction, the mortgage, lien or other security interest is also cancelled. Within 20 calendar days after we receive your notice, we must take the steps necessary to reflect the fact that the mortgage, lien or other security interest on or in your home has been cancelled, and must return to you any money or property you have given to us or to anyone else in connection with this transaction.

You may keep any money or property we have given you until we have done the things mentioned above, but you must then offer to return the money or property. If it is impractical or unfair for you to return the property, you must offer its reasonable value. You may offer to return the property at your home or at the location of the property. Money must be returned to the address below. If we do not take possession of the money or property within 20 calendar days of your offer, you may keep it without further obligation.

| **How to Cancel** |
|---|

If you decide to cancel this transaction, you may do so by notifying us in writing, at

Wells Fargo Home Mortgage
ATTN: Post Closing - MAC# D1108-020
1525 West W.T.Harris Blvd., 2nd Floor
Charlotte, NC 28262

You may use any written statement that is signed and dated by you and states your intention to cancel, or you may use this notice by dating and signing below. Keep one copy of this notice because it contains important information about your rights.

If you cancel by mail or telegram, you must send the notice no later than midnight of     **03/29/12**     , (or midnight of the third business day following the latest of the three events listed above). If you send or deliver your written notice to cancel some other way, it must be delivered to the above address no later than that time.

| **Cancellation Request** |
|---|

I wish to cancel this transaction.

Date:                          ,

                                                                    (Seal)
Borrower  **ALLYSON SMITH**



0339510091

NMFL #1184D (G4R1-G4R8)  Rev. 10/5/2009

# EXHIBIT B

04WFG007110

0339510091

# Truth-in-Lending Disclosure

| | |
|---|---|
| Date:      03/08/12 | Borrowers: ALLYSON SMITH |
| Creditor: WELLS FARGO BANK, N.A. | |
| 1525 W. WT HARRIS BLVD,<br>CHARLOTTE, NC  282620000 | Property      456 RUTH STREET<br>Location:  BRIDGEPORT, CT  06606 |

| Annual Percentage Rate | Finance Charge | Amount Financed | Total of Payments |
|---|---|---|---|
| The cost of your credit as a yearly rate. | The dollar amount the credit will cost you. | The Amount of credit provided to you or on your behalf. | The amount you will have paid after you have made all payments as scheduled. |
| 4.0000 % | $     91,021.96 | $   126,648.85 | $   217,670.81 |

**INTEREST RATE AND PAYMENT SUMMARY**

| | Rate & Monthly Payment |
|---|---|
| Interest Rate | 4.000 % |
| Principal  + Interest Payment | $604.64 |
| Est. Taxes + Insurance (Escrow) | $448.23 |
| **Total Est. Monthly Payment** | $1,052.87 |

Intentionally Left Blank

**No Guarantee to Refinance.** There is no guarantee that you will be able to refinance to lower your rate and payments.

**Truth-in-Lending continued on Page 2**

# Truth-in-Lending Disclosure - Page 2

**Insurance:**  Property insurance is required. Property insurance may be obtained through any person of your choice. If you choose to obtain property insurance through the creditor, the term of the policy will be **N/A** and the premium for that term will be **$N/A** .

Flood Insurance ☐ is ☒ is not required. If required, flood insurance may be obtained through any person of your choice. If you choose to obtain flood insurance through the creditor, the term of the policy will be **N/A** and the premium for that term will be **$N/A** .

**Security:**  You are giving a security interest in the property at **456 RUTH STREET**
**BRIDGEPORT, CT  06606**

**Late Charge:**  If payment is late, you will be charged **5.000** % of the payment. In Massachusetts, the late charge is 3% of the principal and interest portion of the payment that is overdue.

**Prepayment:**  If you pay off early, you
☐ may  ☒ will not have to pay a penalty.
☐ may  ☒ will not be entitled to a refund of part of the finance charge.

☐ If you prepay your loan other than on the regular installment date you may be assessed interest charges until the end of the month.

**Assumption:**  Someone buying your home:
☐ may, subject to conditions, be allowed to assume the remainder of the mortgage on the original terms.
☒ cannot assume the remainder of the mortgage on the original terms.

**Demand Feature:**  This obligation ☐ has ☒ does not have a demand feature.

**Variable Rate:**  Your loan ☐ does ☒ does not contain a variable-rate feature.  Disclosures about the variable-rate feature have been provided to you earlier.

See your contract documents for any additional information about nonpayment, default, any required repayment in full before the scheduled date, and prepayment refunds and penalties. Included with this disclosure and made a part of it is the Good Faith Estimate of Settlement Services.

**You are not required to complete this agreement merely because you have received these disclosures or  signed a loan application.**

# EXHIBIT C



OMB Approval No. 2502-0265

## A. Settlement Statement (HUD-1)

### B. Type of Loan

| 1. ☐ FHA   2. ☐ RHS   3. ☒ Conv. Unins. | 6. File Number: | 7. Loan Number: | 8. Mortgage Insurance Case Number: |
|---|---|---|---|
| 4. ☐ VA   5. ☐ Conv. Ins. | | 0339510091 | |

**C. Note:** This form is furnished to give you a statement of actual settlement costs. Amounts paid to and by the settlement agent are shown. Items marked "(p.o.c.)" were paid outside the closing; they are shown here for informational purposes and are not included in the totals.

| D. Name & Address of Borrower:<br>ALLYSON SMITH<br><br>456 RUTH STREET<br><br>BRIDGEPORT, CT 06606 | E. Name & Address of Seller:<br><br>, | F. Name & Address of Lender:<br>WELLS FARGO BANK, N.A.<br><br>1525 W. WT HARRIS BLVD.<br>CHARLOTTE, NC 282620000 |
|---|---|---|
| G. Property Location:<br>456 RUTH STREET<br>BRIDGEPORT, CT 06606<br>FAIRFIELD COUNTY, CT | H. Settlement Agent:<br><br>,<br><br>Place of Settlement:<br>, , | I. Settlement Date:<br>03/31/12 |

| J. Summary of Borrower's Transaction | | K. Summary of Seller's Transaction | |
|---|---|---|---|
| **100. Gross Amount Due from Borrower** | | **400. Gross Amount Due to Seller** | |
| 101. Contract sales price | | 401. Contract sales price | |
| 102. Personal property | | 402. Personal property | |
| 103. Settlement charges to borrower (line 1400) | | 403. | |
| 104 WELLS FARGO BANK, N.A. | 126648.85 | 404. | |
| 105. | | 405. | |
| **Adjustment for items paid by seller in advance** | | **Adjustments for items paid by seller in advance** | |
| 106. City/town taxes          to | | 406. City/town taxes          to | |
| 107. County taxes          to | | 407. County taxes          to | |
| 108. Assessments          to | | 408. Assessments          to | |
| 109. | | 409. | |
| 110. | | 410. | |
| 111. | | 411. | |
| 112. | | 412. | |
| **120. Gross Amount Due from Borrower** | 126648.85 | **420. Gross Amount Due to Seller** | |
| **200. Amounts Paid by or in Behalf of Borrower** | | **500. Reductions in Amount Due to Seller** | |
| 201. Deposit or earnest money | | 501. Excess deposit (see instructions) | |
| 202. Principal amount of new loan(s) | 126648.85 | 502. Settlement charges to seller (line 1400) | |
| 203. Existing loan(s) taken subject to | | 503. Existing loan(s) taken subject to | |
| 204 ADVANCE FEE CREDIT | | 504. Payoff of first mortgage loan | |
| 205. | | 505. Payoff of second mortgage loan | |
| 206. | | 506. | |
| 207 PRINCIPAL REDUCTION | | 507. | |
| 208. | | 508. | |
| 209. | | 509. | |
| **Adjustments for items unpaid by seller** | | **Adjustments for items unpaid by seller** | |
| 210. City/town taxes          to | | 510. City/town taxes          to | |
| 211. County taxes          to | | 511. County taxes          to | |
| 212. Assessments          to | | 512. Assessments          to | |
| 213. | | 513. | |
| 214. | | 514. | |
| 215. | | 515. | |
| 216. | | 516. | |
| 217. | | 517. | |
| 218. | | 518. | |
| 219. | | 519. | |
| **220. Total Paid by/for Borrower** | 126648.85 | **520. Total Reduction Amount Due Seller** | |
| **300. Cash at Settlement from/to Borrower** | | **600. Cash at Settlement to/from Seller** | |
| 301. Gross amount due from borrower (line 120) | 126648.85 | 601. Gross amount due to seller (line 420) | |
| 302. Less amounts paid by/for borrower (line 220) | ( 126648.85) | 602. Less reductions in amount due seller (line 520) | ( ) |
| **303. Cash ☒ From ☐ To Borrower** | .00 | **603. Cash ☐ To ☐ From Seller** | |

The Public Reporting Burden for this collection of information is estimated at 35 minutes per response for collecting, reviewing, and reporting the data. This agency may not collect this information, and you are not required to complete this form, unless it displays a currently valid OMB control number. No confidentiality is assured; this disclosure is mandatory. This is designed to provide the parties to a RESPA covered transaction with information during the settlement process.

0339510091

Settlement Statement   NMFL #0074T & 0074D; Doc Id(s): HT13 and HD13  Rev: 11/2010
Wolters Kluwer Financial Services        VMP ®        Previous editions are obsolete        Page 1 of 4        HUD-1 11/17/08
VMP501FA (1003).00

## L. Settlement Charges

|  |  | Paid From Borrower's Funds at Settlement | Paid From Seller's Funds at Settlement |
|---|---|---|---|
| **700. Total Real Estate Broker Fees** | | | |
| Division of commission (line 700) as follows: | | | |
| 701. $            to | | | |
| 702. $            to | | | |
| 703. Commission paid at settlement | | | |
| 704. | | | |
| **800. Items Payable in Connection with Loan** | | | |
| 801. Our origination charge (Includes Origination Point(s)          % or $          )  $          (from GFE #1) | | | |
| 802. Your credit or charge (points) for the specific interest rate chosen       $  462.56     (from GFE #2) | | | |
| 803. Your adjusted origination charges                (from GFE A) | | (462.56) | |
| 804. Appraisal fee to                (from GFE #3) | | | |
| 805. Credit report to                (from GFE #3) | | | |
| 806. Tax service to                (from GFE #3) | | | |
| 807. Flood certification                (from GFE #3) | | | |
| 808. | | | |
| 809. | | | |
| 810. | | | |
| 811. | | | |
| 812. | | | |
| 813. | | | |
| **900. Items Required by Lender to Be Paid in Advance** | | | |
| 901. Daily interest charges from 03/31/12 to 04/01/12 @ $ 13.88 /day (from GFE #10) | | 13.88 | |
| 902. Mortgage insurance premium for      months to                (from GFE #3) | | | |
| 903. Homeowner's insurance for 1 years to                (from GFE #11) | | | |
| 904. FLOOD INSURANCE   YEARS TO | | | |
| 905. | | | |
| **1000. Reserves Deposited with Lender** | | | |
| 1001. Initial deposit for your escrow account            (from GFE #9) | | 2560.65 | |
| 1002. Homeowner's insurance        12 months @ $ 53.25 per month $ 639.00 | | | |
| 1003. Mortgage insurance          months @ $        per month $ | | | |
| 1004. Property taxes CITY        5 months @ $ 394.98 per month $ 1974.90 | | | |
| 1005. PROPERTY TAXES COUNTY          months @ $        per month $ | | | |
| 1006. ANNUAL ASSESSMENTS          months @ $        per month $ | | | |
| 1007. FLOOD INSURANCE          months @ $        per month $ | | | |
| 1008.          months @ $        per month $ | | | |
| 1009.          months @ $        per month $ | | | |
| 1010. Aggregate Adjustment                $ -53.25 | | | |
| **1100. Title Charges** | | | |
| 1101. Title services and lender's title insurance LSI            (from GFE #4) | | 290.80 | |
| 1102. Settlement or closing fee            $ | | | |
| 1103. Owner's title insurance            (from GFE #5) | | | |
| 1104. Lender's title insurance            $ 280.80 | | | |
| 1105. Lender's title policy limit            $ 126648.85 | | | |
| 1106. Owner's title policy limit            $ | | | |
| 1107. Agent's portion of the total title insurance premium     $ | | | |
| 1108. Underwriter's portion of the total title insurance premium  $ | | | |
| 1109. | | | |
| 1110. | | | |
| 1111. | | | |
| 1112. | | | |
| 1113. | | | |
| **1200. Government Recording and Transfer Charges** | | | |
| 1201. Government recording charges            (from GFE #7) | | 125.00 | |
| 1202. Deed $        Mortgage $ 125.00 Releases $ | | | |
| 1203. Transfer taxes            (from GFE #8) | | | |
| 1204. City/County tax/stamps    Deed $        Mortgage $ | | | |
| 1205. State tax/stamps    Deed $        Mortgage $ | | | |
| 1206. | | | |
| **1300. Additional Settlement Charges** | | | |
| 1301. Required services that you can shop for        (from GFE #6) | | 19.00 | |
| 1302. FLOOD LIFE OF LOAN FEE            $ 19.00 | | | |
| 1303.            $ | | | |
| 1304.            $ | | | |
| 1305.            $ | | | |
| 1306.            $ | | | |
| 1307.            $ | | | |
| 1308.            $ | | | |
| **1400. Total Settlement Charges (enter on lines 103, Section J and 502, Section K)** | | | |

# EXHIBIT D

0339510091

ALLYSON SMITH

456 RUTH STREET, BRIDGEPORT, CT  06606

Dear ALLYSON SMITH

We're so glad that you have accepted our refinance invitation and requested a **Close at Home**® Mortgage Kit for the **Wells Fargo Three-Step Refinance** *SYSTEM*®.  To ensure timely processing of your loan, we ask that you please return the completed, fully signed and notarized "Sign and Return" package by  03/19/12 by the express delivery carrier, envelope enclosed, in order to start saving money every month!  Depending on program availability in your state, you may be completing your closing online via the ClosingStream program or in-person with a designated closing attorney via the face-to-face program.  If you will be utilizing the online closing process you will not be receiving a Close at Home ®Mortgage Kit in the mail, but you will have the option to download an electronic copy prior to your online closing.  If you will be utilizing the face-to-face attorney closing option your Close at Home Mortgage Kit will be delivered to the closing attorney designated to help you complete the closing.  Our designated title company and closing attorney will be contacting you to coordinate the face-to-face closing process.

The **Wells Fargo Three-Step Refinance** *SYSTEM*, unique to Wells Fargo, provides you with a first mortgage refinance at a fully guaranteed interest rate of  4.000 % (APR  4.0000 %) for the **FIXED RATE**                             product that you have selected.  There are no closing costs or hidden fees with the **Wells Fargo Three-Step Refinance** *SYSTEM*.  Please review the enclosed Note, Truth in Lending Disclosure, and HUD-1 Settlement Statement which contain the details of your refinance transaction.

The great thing about this mail-away closing is that it saves the hassle of scheduling time for a sit-down meeting with a closing agent and lender representative to sign documents.  However, a mail-away closing means that you and all co-borrowers will need to **properly sign, notarize, and return all of the documents** required by Federal and State regulations.

**Important Information for Mortgage Applicants whose application was taken in Spanish**
Please note that although we may have taken your mortgage application in Spanish, all enclosed legal documents, instructions, additional information, disclosures, and future communications will be provided to you in English only. We recommend that you obtain the services of an independent, third party interpreter at your expense to assist you as needed.

Cabe señalar que aunque haya recibido su solicitud de hipoteca en español, todos los documentos legales adjuntos, instrucciones, información adicional, declaraciones y futura comunicaciones le serán provistos solamente en ingles. Le recomendamos que contrate por su propia cuenta los servicios de un interprete externo independiente pare que le puede brindar la asistencia que usted requiera.

**Your Close at Home Mortgage Kit contains two packets of documents.**
-    "**Sign and Return**" Packet:  This is the set of documents that you will be signing and returning in the enclosed delivery envelope by the express delivery carrier.
-    "**Keep For Your Records**" Packet:  This set of documents is your copy and should not be signed or returned to us.  (If applicable, an additional set of documents is included for Iowa 'Co-Signers').

**Important Reminders Before Getting Started:**
-    The instructions are simple, but accuracy is very important. Failure to sign and witness the documents according to instructions provided could delay the closing and put this transaction in jeopardy.
-    Please be aware that if the property securing this loan is anyone of the following **DO NOT** complete the enclosed documents but contact us immediately at 866-809-6271.
     -    A Cooperative
     -    Held in a Trust
     -    An Illinois Land Trust (applicable only in the state of Illinois)
     -    An Investment property
     -    Held as Leasehold Estate or Interest
     -    Held under a Restricted Deed
     -    Has been refinanced previously under the Home Affordable Refinance Program (HARP)

**Getting Started:**
-    Please read all of the instructions preceding each individual document in the closing packet as there are many state-specific instructions that may require your attention.
-    As these are legal documents, a Notary Public is required to witness the signing of some of the documents. A nominal fee may be charged by the Notary Public performing this duty. Wells Fargo Bank, N.A. is not responsible for this fee.
-    If the instructions are not clear, please call us immediately toll free at 866-809-6271.

**What happens after the "Sign and Return" packet is sent back?**
1.  Your new mortgage loan will fund as of the date on the Note, after **WELLS FARGO BANK, N.A.** receives your express delivery package and reviews it to make sure it was completed and correctly signed. If there are any discrepancies found during our review process, you will be immediately contacted.
2.  You must make your regularly scheduled **MARCH** mortgage payment.
3.  You may skip your **APRIL** mortgage payment.
4.  Your new payment amount will begin for your **05/01/12** payment.  You will receive a statement in the mail.


**Program Availability**
We reserve the right to modify or eliminate this Home Affordable Refinance Program (HARP) at any time without notice to you.  If the program is eliminated or you no longer qualify because of program modifications, you will be required to submit a new application for a different loan program.


**In order to disburse your new loan as scheduled, your properly executed closing package must be mailed via express delivery carrier no later than 03/26/12 . If you cannot mail the "Sign and Return" package by this date, the current loan transaction cannot be completed under the terms of these closing documents.  Please contact our office at 866-809-6271 to discuss options for continuing this transaction.**

**Thank you for being a WELLS FARGO BANK, N.A.**
**customer.**


Sincerely,
Kristie Lewis
**WELLS FARGO BANK, N.A.**

# EXHIBIT E

04WFG007110

0339510091

# Frequently Asked Questions About
## the Wells Fargo Three-Step Refinance *SYSTEM* ®

**Q: How do I know that I'm receiving a no closing cost transaction?**

- Here's how you will know: Enclosed in this package are a "Truth In Lending Disclosure Statement", a "Good Faith Estimate" and a "HUD-1 Settlement Statement". These are legally required documents designed to show you the real cost of your loan.

- The "Good Faith Estimate" and "HUD-1 Settlement Statement" are your further guarantee that there are no extra costs. The fees listed on these documents are what you would normally pay out-of-pocket for a traditional refinance. With this program, these costs will be paid by the Lender. You do not have to pay out any extra cash, unless your notary charges you a fee to notarize the closing documents. Please note, a standard fee associated with the recording of the satisfaction of your existing mortgage will be included in the total payoff of your existing loan.

**Q: What do I need to know?**

- If you are making **escrow payments for taxes and insurance** on your existing loan, you will be asked for your consent to have us transfer your existing escrow reserves for taxes and insurance to your new loan. Your monthly payment will include an amount for taxes, hazard insurance premiums, premiums for other insurance you have (such as flood insurance) and other items that may be required to be escrowed under the terms of the loan agreement.
- This refinance transaction will impact your escrow account if you make escrow payments for taxes and insurance on your existing loan. This is because your monthly escrow payment amount is 1/12th of your yearly amount owed for taxes and/or insurance. Should your new loan fund, there will be one month in which you will not make a mortgage payment and will likely result in a shortage to your escrow account. However, we will conduct an **analysis of your escrow account** soon after your new loan closes and mail it to you. This analysis will establish your new, adjusted escrow payment amount. The new amount will be included in your billing statement for your first payment on your new loan.
- If you are set up on our **Preferred Payment Plan** program to have your monthly payment automatically debited from your checking or savings account and wish to continue this program with your new loan, then you must complete the Preferred Payment Plan enrollment form that will be included with your closing documents.
- If you pay for any additional **non-mortgage products** through your monthly mortgage statement, contact those vendors directly to cancel the service on your old loan and to have the service reestablished on your new loan. Please continue to make your regular scheduled mortgage payments. When you receive your **Close at Home** ® Mortgage Kit there will be additional instructions on when you can stop making payments on your existing loan.
- Please be aware that if your package is not timely received or if the documents are not executed properly, the Lender may withdraw this refinance invitation for the **Wells Fargo Three-Step Refinance *SYSTEM*** ®. The Lender will notify you if your refinance invitation is withdrawn. You will then be expected to continue to make payments on your original loan.

**Q: Are there additional terms or conditions?**

- The Home Affordable Refinance Program (HARP) guidelines allow one single HARP refinance transaction, and once a loan is refinanced via HARP, it cannot be refinanced via HARP again.
- This refinance invitation is not transferable to anyone else.
  Because your primary residence secures your current loan and the new loan, this property must meet all the Lender title requirements and could be subject to a title search and title report if necessary. The Lender will pay for both.
- You must meet all applicable criteria relating to creditworthiness.

NMFL #0197 (DFAQ)   Rev. 12/2011

# EXHIBIT F

# RANDALL S. NEWMAN, P.C.

ATTORNEYS AT LAW

37 WALL STREET, PH D
NEW YORK, NY 10005

(212) 797-3737
FAX (212) 797-3172
RSN@RANDALLNEWMAN.NET

October 21, 2014

## VIA FEDERAL EXPRESS

Wells Fargo Home Mortgage
Attn: Post Closing - MAC# D1108-020
1525 West W.T. Harris Blvd., 2nd Floor
Charlotte, NC 28262

| Re: | Mortgagor: | *Allyson Smith* |
|---|---|---|
| | Premises: | *456 Ruth Street, Bridgeport, CT 06606* |
| | Loan No.: | *339510091* |
| | Original Mortgagee: | *Wells Fargo Bank, N.A.* |
| | Date of Mortgage: | *March 31, 2012* |

Dear Sir/Madam:

I represent Allyson Smith concerning the loan transaction which she entered into with Wells Fargo Bank, N.A. on or about March 31, 2012

I have been authorized by my client to rescind this transaction and my client hereby exercises that right to rescind pursuant to the Federal Truth in Lending Act, 15 U.S.C. § 1601 *et seq.* ("TILA") and Regulation Z, 12 C.F.R. § 226.26 *et seq.* ("Regulation Z"). My client is entitled to rescind the loan transaction because: 1) she did not receive two (2) copies of a Notice of Right to Cancel that clearly and conspicuously disclosed the date her rescission period expired; and 2) the TILA Disclosure Form provided to my client fails to contain all of the "material disclosures" required by 15 U.S.C. § 1602(v).

Pursuant to TILA and Regulation Z, you have twenty (20) days after receipt of this notice of rescission to return to my client all monies paid and to take action necessary or appropriate to reflect termination of your security interest in my client's property.

We are prepared to discuss a tender obligation, should it arise, and satisfactory ways in which my client may meet this obligation. Be advised that my client is ready, willing and able to satisfy her tender obligation pursuant to TILA and Regulation Z after the amount of her tender obligation is determined.

In the event you do not cancel the security interest and return all consideration paid by my client within twenty (20) days of receipt of this letter, you will be responsible for actual and statutory damages pursuant to 15 U.S.C. § 1640(a).

Please send me a copy of my client's payment history and other documents showing the loan disbursements, loan charges, payments made and current principal balance due so that I can accurately compute my client's tender obligation.

Very truly yours,

Randall S. Newman

cc:   Wells Fargo Home Mortgage
      PO Box 10335
      Des Moines, IA 50306

      Via Certified Mail

2

# EXHIBIT G



Wells Fargo
P.O. Box 10335
Des Moines, IA 50306-0335

October 30, 2014

Randall S. Newman
Randall S. Newman, P.C. Attorneys at Law
37 Wall Street, Ph D
New York, NY 10005

Subject: Resolution to the inquiry received regarding Allyson Smith

Dear Mr. Randall S. Newman:

Wells Fargo Home Mortgage (WFMH) received correspondence October 23, 2014, regarding rescission.  Due to your legal representation of our customer, I am able to respond directly to you.

**In your inquiry, you requested or referenced:**

- Representation
- Request to rescind the above-referenced mortgage loan
- Payoff balance
- Loan History

Please find our responses to the questions raised in your inquiry addressed below.

**Representation**

We have updated our records to reflect that you are authorized to receive information regarding the above referenced loan. The authorization is valid until October 21, 2054, and may be revoked verbally or in writing at any time. As a security measure, we require that the last four digits of the mortgagor's Social Security Number be provided every time information is requested.

**Request to rescind the above-referenced mortgage loan**

We have reviewed your request to rescind the above-referenced mortgage loan and determined that your client's loan is not eligible to rescind. Our records reflect that the customer's refinance mortgage loan was processed and closed on March 13, 2012, as a federal Home Affordable Refinance Program Three-Step Refinance loan. The entire process was completed over the telephone and through the mail, eliminating the hassle of a traditional closing.

Enclosed, please find a copy of the document titled Acknowledgement of Receipt of the Notice of Right to Cancel. This document bears your client's signature, indicating her acknowledgement that she did in fact receive two copies of the Notice of Right to Cancel. Also enclosed is the Notice of Right to Cancel, which does provide details as to when the right of rescission period would expire. Had your client intended to cancel the loan within the rescission period, she

Smith
October 30, 2014
Page 2

would have had to sign one of those copies and return it to WFHM. Your client did not execute her right to cancel within the prescribed time period.

Also enclosed, please find a copy of the Truth in Lending Disclosure Statement. This is a standard disclosure document and as such, does not require the customer's signature and other information is required to be disclosed within the Statement. We have reviewed this loan file and find no evidence of nondisclosure. If you have a specific origination issue, please provide further details and we will research and respond.

**Payoff balance**

Pursuant to your request for the payoff balance and additional information on the above referenced loan, we have enclosed a copy of the payoff statement. Please note that the information provided on this statement is good through November 28, 2014.

**Loan history**

Enclosed is a Customer Account Activity Statement (CAAS) reflecting a complete payment history for the period of April 03, 2012, through October 01, 2014. The CAAS reflects when payments were received, how they were applied to the loan, and any distributions made from the loan. Also included are running balances of the unpaid principal, escrow, unapplied funds account, and outstanding charges. The dates charges were assessed, any amounts paid toward these charges, and any reversal of these charges are also reflected.

This CAAS has been provided pursuant to your request.

This CAAS is manually prepared outside of the regular course of business to provide a streamlined form of this loan payment history. It is not a record kept by Wells Fargo in the course of regularly conducted business.

**Going forward**

If you have any additional questions or need clarification regarding the information provided in this letter, please contact me directly at 1-800-853-8516, extension 21436. I am available to assist you Monday through Friday, 8:00 a.m. to 5:00 p.m. Central Time. If you require immediate assistance and I am unavailable, other representatives are available to assist you at 1-800-853-8516, Monday through Friday, 7:00 a.m. to 7:00 p.m. Central Time.

Sincerely,

Nathalie Mahood
Executive Mortgage Specialist
Customer Care and Recovery Group

Enclosure(s)